UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                    :
KENT BAKER,                                         :          01 Civ. 5440 (LAP)
                                                    :
                          Plaintiff,                :
                                                    :          MEMORANDUM
            v.                                      :          AND ORDER_____
                                                    :
URBAN OUTFITTERS, INC. and                          :
URBAN OUTFITTERS WHOLESALE, INC.,                   :
                                                    :
                          Defendants.               :
                                                    :
-------------------------------------------------------------X

LORETTA A. PRESKA, United States District Judge:

            Urban Outfitters, Inc. and Urban Outfitters Wholesale, Inc. (collectively "Urban")

inadvertently used a single photograph in which Kent Baker ("Baker") claimed rights to an insert

in 862 plastic picture frames.  Upon being informed of Baker's claims, Urban apologized for its

mistake, voluntarily stopped selling the products at issue, and repeatedly offered Baker

settlements in amounts that more than doubled the $3,896 in profit that it received from selling

the picture frames.  The decision of Baker and his counsel, Steven A. Weingrad, to pursue

expensive and time-consuming litigation is the basis for Urban's present motion for costs and

fees incurred in defending the action (1) against Baker under the Copyright Act and Fed. R. Civ.

P. 68, and (2) against Weingrad under 28 U.S.C. § 1927 and the Court's inherent authority.  For

the reasons set out below, these motions have been granted by order dated March 30, 2006.

I.  Background

            Baker, a professional photographer, took a series of photographs during a four-

week road trip along U.S. Route 66 in April and May of 1999.  During the course of the trip,

Baker took a photograph of a man in a cowboy hat, Mark Anthony Howells ("Howells"), leaping from one boxcar to another (the "Photograph").  A collection of the photographs from Baker's trip was subsequently published in 1999 in a hardcover book entitled "66/99 An American Road Trip" ("66/99").

Between September 2000 and March 2001, Urban used the Photograph as the basis for a disposable paper insert (the "Paper Insert") in its 8" x 10" plastic picture frame products.  The Paper Insert was incorporated in, and sold as part of, approximately 862 picture frames, which retailed for $6.00 and cost Urban $1.48 to produce.  Urban's gross profit on the 862 plastic frames was $3,896.

Urban became aware of its infringing conduct when Baker, by his agent, Kathy Eng, informed Urban's General Counsel and Secretary, Glenn A. Bodzy, that Urban had infringed Baker's copyright.  Urban then entered negotiations with multiple representatives of Baker for use of the Photograph.  When it became clear that the matter could not be amicably resolved, in March 2001, Urban removed the picture frames from its shelves and replaced the Paper Insert with a different insert.  On March 9, 2001, Baker registered the Photograph (as part of a photo essay collection) with the United States Copyright Office.

On June 15, 2001, Baker filed his original complaint, alleging copyright infringement, tortious misappropriation of goodwill, and infringement under the Digital Millenium Copyright Act.  By Stipulations and Orders filed October 15, 2001, and February 11, 2002, Baker's claims for copyright infringement statutory damages under 17 U.S.C. § 504 and attorney's fees under 17 U.S.C. § 505 were dismissed.  By Stipulation and Order filed June 10, 2002, Baker's claim under the Digital Millenium Copyright Act was dismissed.  By Stipulation

and Order filed September 30, 2002, Baker's claim for tortious misappropriation of goodwill was dismissed.

Discovery proceeded with great difficulty.  Perhaps most indicative of that difficulty is that at first, Weingrad objected to producing documents relating to any prior licensing by Baker of his photographs on the ground that such documents were irrelevant. The Court ordered a response.  Baker (and Weingrad) represented to the Court during telephone conferences that Baker had never licensed an existing photograph but only engaged in commissioned work.  Baker's supplemental response to Urban's document request on this topic stated that no responsive documents existed.

At his subsequent deposition, however, Baker admitted that in fact he had licensed photographs in the past and that he had retained an agent, Jason Shenai of Millennium Images, to license photos, including those in Baker's 66/99 book.  In response, Urban renewed its request for all documents relating to any licensing transactions by Baker.  Finally, on the last day of discovery, after Urban had completed taking depositions, Baker produced numerous documents, including his contract with Shenai and Millenium Images.  The contract was entered into prior to Baker's contacts with Urban and, thus, prior to the institution of this action.  As held in Baker v. Urban Outfitters, Inc., No. 01 Civ. 5440, 2004 U.S. Dist. LEXIS 22737, at *6, *8 (S.D.N.Y. Nov. 3, 2004) ("Baker II"), Baker's conduct in untruthfully denying prior licensing activities and then producing the long-sought relevant documents only at the end of discovery was "contumacious and disruptive," and "discovery was prolonged and complicated by Baker's conduct, not Urban's."

On or about January 9, 2002, Urban made an offer of judgment to Baker pursuant to Rule 68 of $9,096.  That offer was rejected on January 10, 2002.

On or about March 31, 2003, Baker's motion for summary judgment was denied on the ground that an issue of fact existed as to Baker's ownership of the copyright, 254 F. Supp. 2d 346, 351-52, 361 (S.D.N.Y. 2003) ("Baker I"), and his motion for Rule 11 sanctions was denied.  Indeed, the Rule 11 motion was found to be so lacking in merit that Urban's attorney's fees incurred in opposing the motion were assessed against Weingrad pursuant to Rule 11.  Id. at 359-61.  The amount of $19,270 was assessed.  See Frandsen's letter to Weingrad dated February 4, 2004.  In the same March 31, 2003 Order, Urban's motion for partial summary judgment limiting the amount of Baker's damages to $3,896 was granted.  Id. at 355-59.

By Memorandum and Order filed November 10, 2004, Urban's motion pursuant to Local Civil Rule 54.2 to require Baker and/or Weingrad to post a bond as security for costs and fees was granted.  Baker II, 2004 U.S. Dist. LEXIS 22737, at *10-11.  Thereafter, when the bond was not posted, Urban sought dismissal of the action which was granted by Order dated February 8, 2005 (dkt. no. 50).

Discussion

II.     Urban's Motion Against Baker

    A.     Section 505 of the Copyright Act

Under Section 505 of the Copyright Act, a court has discretion to allow the recovery of full costs to any party in a civil action brought under the Copyright Act.  17 U.S.C. § 505.  As part of the costs, a court may "also award a reasonable attorney's fee to the prevailing party."  Id.  This fee-shifting provision is symmetrical:  costs and attorney's fees are equally available to prevailing plaintiffs and defendants.  See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994).

An award of attorney's fees and costs is not automatic but rather lies within the sole and rather broad discretion of the Court.  See, e.g., Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1011 (2d Cir. 1995); see also Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986).  In exercising their discretion, courts generally consider a number of equitable factors, including the non-prevailing party's frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), together with the need in particular circumstances to advance considerations of compensation and deterrence.  Lieb, 788 F.2d at 156; see also Fogerty, 510 U.S. at 535 n.19 (citing Lieb factors with approval); Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 121 (2d Cir. 2001) (same).

Of the above factors, objective unreasonableness is one of the most significant factors and, in the Second Circuit in particular, it is given substantial weight in determining whether fees are warranted.  E.g., Matthew Bender & Co., 240 F.3d at 122; Earth Flag Ltd. V. Alamo Flag Co., 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001).  Indeed, a number of courts in this circuit have awarded attorneys' fees to prevailing defendants solely upon a showing that the plaintiff's position was objectively unreasonable, without regard to any other "equitable factor." See, e.g., Adsani v. Miller, No. 94 Civ. 9131, 1996 U.S. Dist. LEXIS 13740, at *41-42 (S.D.N.Y. Sept. 19, 1996).

Here, the equitable factors overwhelmingly weigh in favor of an award of costs and fees because (1) this lawsuit was motivated by improper considerations, (2) the lawsuit was prosecuted in bad faith, (3) the factual and legal contentions advanced by the plaintiff were either frivolous or objectively unreasonable, and (4) there is a unique need in this case for both compensation and deterrence.

1.      <u>Improper Motivation</u>

There is no precise rule to determine what a prevailing party seeking an award of costs and fees needs to establish.  <u>See</u> <u>Fogerty</u>, 510 U.S. at 534.  However, the presence of improper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees.  <u>See</u> <u>Matthew Bender & Co.</u>, 240 F.3d at 125-27.  In this case, the record establishes that Baker was improperly motivated and otherwise acted in bad faith in bringing the instant lawsuit.

First, Urban had ceased all use of the Paper Insert prior to commencement of this action.  <u>See</u> <u>Baker II</u>, 2004 U.S. Dist. LEXIS 22737, at *2.  Thus, Baker could not have been motivated to file this action to obtain an injunction.

Second, Urban informed Baker very early on that it had sold no more than 862 of the plastic picture frame products and Urban offered Baker more than double the amount of Urban's gross profit on the sales of the picture frame products (not just the Paper Insert) to settle this dispute.  Despite at least one lengthy telephone conference with the counsel and the Court, Baker refused the offer out of hand, insisting instead that he was entitled to more than a quarter of a million dollars.  Thus, Baker was not motivated to file and maintain this lawsuit to recover Urban's profits or any fair and reasonable multiple thereof.

Finally, the true motivation for the filing of the instant suit can be gleaned from an April 2001 letter from Baker's agent/representative, Peter B. Kaplan, to Weingrad.  In that letter, Kaplan stated that he thought Baker's case is "great" because it involves "a lot of <u>STUPID</u>, obstinate, deep pocketed, WILLFUL INFRINGERS."  Kaplan also suggested that both he and Weingrad would benefit from the case, as "you would hit many news stories or should I say WE."  Thus, rather than pursuing resolution of a fairly minor dispute in good faith, the record

suggests that Baker (and his counsel) filed and maintained this suit in an attempt to extract a

significant payment from perceived "deep pocketed" defendants (and in an attempt to garner

publicity for Baker's agent and for his lawyer).  In his Declaration dated July 12, 2004 ("7/12/04

Baker Decl."), Baker agreed that "this case should not have progressed past service of a

complaint," but he stated that "the person who evaluated [the case for Urban] at that time

completely underestimated its value."  7/12/04 Baker Decl. at 7.  Baker then proceeded to

explain that Urban's gross profit on its "poor marketing scheme" to sell "junk plastic frames"

does not "equal a reasonable licensing fee."  Baker then went on to explain that "the image was

part of a series that cost thousands of dollars to shoot and was not one I would have licensed for

a pittance."  7/12/04 Baker Decl. at 7-8.  Baker's statements not only ignore the law but instead

confirm his motivation of obtaining a legally unjustified windfall.

          Baker's bad faith motivation also may be inferred from false allegations in the

complaint.  For example, in paragraph 33 of the complaint, Baker alleged that Howells was an

internationally known professional model and that Howells demanded a fee for Urban's use of

his likeness.  These allegations were made despite the facts that both Baker and Howells

conceded that Howells was not an "internationally-known professional model" and neither Baker

nor Howells could recall Howells' ever demanding a fee as a result of Urban's use of the

Photograph.  Thus, Baker had actual personal knowledge that the above allegations were not

true.

          This manifest bad faith alone entitles Urban to a full award of its costs and fees in

this case.  E.g., Cloth v. Hyman, 146 F. Supp. 185, 193 (S.D.N.Y. 1956) (awarding costs and

attorneys' fees to a successful copyright infringement defendant based on the principle that "[a]n

attorney's fee is properly awarded when the infringement action has been commenced in bad

faith, as where the evidence establishes that the plaintiff's real motive is to vex and harass the defendant"); see also Matthew Bender & Co., 240 F.3d at 125-27.

2.     Objective Unreasonableness

In evaluating a motion for costs and attorney's fees under the Copyright Act, the Court of Appeals has directed that "objective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted." Matthew Bender & Co., 240 F.3d at 122.  The unreasonable nature of Baker's claims in this case is manifest.

The most obvious example of the unreasonable nature of Baker's claims is the fact that throughout the course of the action, he and his counsel maintained their demand for more than $260,000 in "actual damages" on a claim that was shown fairly promptly not to be worth more than $3,896.  Section 504 of the Copyright Act defines actual damages as "the actual damages suffered by [the plaintiff] as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).  On the facts of this case, this involved substantially less money than demanded, and even Baker knew it.  See Weingrad's letter to Baker dated November 30, 2001 (wherein Weingrad informs Baker that he should be prepared to attend a deposition and a trial in New York, "which expense may not be warranted in light of [Urban's] sales records").

Notwithstanding the above, Baker continued to demand damages of more than a quarter of a million dollars – even after a settlement conference with the Court on this issue in which the applicable legal principles were discussed.  To justify his claim, Baker also suggested that he was actually damaged due to a moral debt that he felt he owed to Howells, the model depicted in the Photograph, that he had a "moral rights" claim of his own, and that he was

entitled to a "reasonable licensee fee" in an amount all out of proportion with anything that

Baker had ever been paid for a license before.  As set out in Baker I, 254 F. Supp. 2d at 356-59,

these damage claims were unreasonable.[1]

        3.      Compensation and Deterrence

In determining whether to award a prevailing party costs and fees, courts also

review whether there is a need to advance considerations of compensation and deterrence.  See

Lieb, 788 F.2d at 156.  The need for both compensation and deterrence in this case is strong.

With respect to compensation, as noted above, Baker's continuing pursuit of this

case in the quest for a quarter of a million dollars was unreasonable.  Nevertheless, in light of

Baker's claim, Urban had no choice but to engage counsel and expend resources to effect the

dismissal of Baker's claims.  Under these circumstances, the policies behind the Copyright Act

would be violated by requiring Urban to bear its own costs and fees.  See Fogerty, 510 U.S. at

529 ("'The expense of any letigation [sic] is considerable.  Unless, therefore, some provision is

made for financial protection to a litigant, if successful, it may not pay a party to defend rights,

even if valid, a situation opposed to justice . . . .  It is increasingly recognized that the person

who forces another to engage counsel to vindicate, or defend, a right should bear the expense of

such engagement and not his successful opponent . . . .'" (quoting W. Strauss, Damage

Provisions of the Copyright Law, Study No. 31 (H. Judiciary Comm. Print 1960))).

On the question of deterrence, an award of costs and fees is crucial here, so as to

deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims

based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and

---

[1] As set out below, the statutory damage claim and the tortious interference claim are also
unreasonable.  I cannot clearly ascribe to Baker the legal knowledge necessary to recognize the
unreasonableness of those claims and thus do not rely on them in this portion of the motion.

that there will be no adverse consequences if they lose.  In <u>Earth Flag Ltd.</u>, the Court explained

this concern:

> This case presented a straightforward copyright infringement
> claim that was objectively unreasonable . . . and an award of
> attorneys' fees in such a case would beneficially deter, rather
> than excessively chill, future lawsuits.  Failing to award
> attorneys' fees to defendants in such situations would invite
> others to bring similarly unreasonable actions without fear of
> any consequences.  Under the circumstances of this case, and
> "to advance considerations of compensation and deterrence,"
> defendants must be compensated for being forced to defend
> against such a baseless action.

154 F. Supp. 2d at 668 (citations omitted); <u>see</u> <u>also</u> <u>Arclightz & Films Pvt. Ltd. v. Video Palace</u>

<u>Inc.</u>, No. 01 Civ. 10135, 2003 U.S. Dist. LEXIS 19086, at *12-13 (S.D.N.Y. Oct. 23, 2003)

("However, where a plaintiff's case is devoid of legal or factual basis, 'failing to award

attorneys' fees to defendants in such situations would invite others to bring similarly

unreasonable actions without fear of any consequences.  Under the circumstances of [such a]

case, and "to advance considerations of compensation and deterrence," defendants must be

compensated for being forced to defend against such a baseless action.'").  An award of fees

and costs is necessary to convince Baker and other like-minded plaintiffs that federal courts do

not exist so that they can roll the dice on unreasonable allegations or so that they can seek fame

and fortune from "deep-pocketed" defendants.

> 4.    <u>Amount Awarded</u>

Under the Copyright Act, 17 U.S.C. § 505, the Court must determine a

"reasonable" award.  The starting point of the attorney's fees calculation is the "lodestar"

method, under which fees are determined by multiplying the number of hours reasonably

expended on the litigation by a reasonable hourly rate.  <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424,

433 (1983); <u>Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.</u>, 246 F.3d 142, 150 (2d Cir.

2001); Peer Int'l Corp. v. Max Music & Entm't, Inc., No. 03 Civ. 0996, 2004 U.S. Dist. LEXIS 12760, at *15 (S.D.N.Y. July 9, 2004).

The lodestar amount in this case is $388,424.54, which includes $348,675.87, the amount of costs and fees incurred by Urban through the end of 2003 (which amount does not include the $19,270 assessed against Weingrad in Baker I), see Declaration of Cheryl L. Slipski, Esq., executed on April 22, 2005, in Support of Defendants' Motion for Costs, Expenses and Attorney's Fees ("Slipski Decl."), ¶ 9, plus the $22,386.50 incurred in 2004, Declaration of Nancy Rubner Frandsen executed July 8, 2005 ("Frandsen Decl."), ¶ 5, plus the $17,362.17 incurred through May 31, 2005, Frandsen Decl. ¶ 6.  As set forth in more detail in the Slipski and Frandsen Declarations, the total fee amounts were obtained by multiplying the actual number of hours spent in defending this case by the billing rates of counsel working on the case, and then subtracting the $19,270 already awarded to Urban in Baker I and subtracting fee reductions made by counsel.  Costs and expenses were then added to that figure.

Once the lodestar is established, there is a "strong presumption" that it is reasonable.  See City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); Granada Sales Corp. v. Aumer, No. 02 Civ. 6682, 2003 U.S. Dist. LEXIS 10400, at *10 (S.D.N.Y. June 2, 2003).  The party that asks the court to depart from the lodestar amount bears the burden of proving that such a departure is necessary to the calculation of a reasonable fee.  See City of Burlington, 505 U.S. at 562.  I find no basis for departing from the lodestar in this case.

I have reviewed Urban's fees and costs, as set out in the publicly filed documents and as set out in the Judge's Eyes Only unredacted documents and find them to be reasonable in all respects, especially in light of the protracted nature of the litigation and the sometimes-

11

incomprehensible briefs submitted on behalf of Baker.  In addition, Baker and his counsel do not

seem to contest the reasonableness of the rates charged by Urban's counsel but only a rather <u>de</u>

<u>minimus</u> number of hours.  For example, they challenge some 11 hours spent consulting with

Urban regarding the Complaint and 2.1 hours of Internet research relating to Baker and his book.

Neither is unreasonable, particularly in light of the numerous claims that were subject to

dismissal.  Certainly counsel had good reason to consult with the client about various strategies

of dealing with such a pleading and the costs of such strategies.  Also, internet research on Baker

and his book is clearly reasonable under the circumstances.

Baker also challenges an August 24, 2001 entry which he says shows 1.2 hours

regarding an extension of time to answer.  The entry, however, also includes consultation with

the client and, as such, is wholly reasonable.  Finally, Baker is not entitled to review counsel's

notes and memoranda, if any, relating to fees for which reimbursement is not being sought.  In

sum, Urban's counsel's fees, costs and expenses were reasonable, and an award in the full

amount will advance the purposes of the Copyright Act and provide appropriate compensation

and deterrence.

B.      <u>Rule 68</u>

Pursuant to Rule 68, a defendant may serve an adverse party with an Offer of

Judgment in a specified amount.  If the party to whom the offer is made accepts the offer,

judgment in the amount offered is entered.  If, however, the party chooses not to accept the offer,

and the final judgment in the case is not more favorable than the offer, the party who rejected the

offer is required to "pay the costs incurred after the making of the offer."  Fed. R. Civ. P. 68.

As used in Rule 68, the term "costs" refers to all costs awardable under the statute

or other authority that is the basis for the underlying claim.  <u>Marek v. Chesny</u>, 473 U.S. 1, 9

(1985); <u>Wilson v. Nomura Sec. Int'l, Inc.</u>, 361 F.3d 86, 89 (2d Cir. 2004).  Thus, where the

underlying statute defines "costs" to include attorney's fees, such fees are "costs" for purposes of

Rule 68.  <u>Wilson</u>, 361 F.3d at 89.  The Copyright Act defines "costs" to include attorney's fees.

Specifically, in Section 505, the statute states as follows:  "In any civil action under this title, the

court in its discretion may allow the recovery of full costs . . . .  Except as otherwise provided by

this title, the court may also award a reasonable attorney's fee to the prevailing party as part of

the costs."  17 U.S.C. § 505.  For this reason, "when the plaintiff [in a copyright action] recovers

less than the defendant's formal offer of judgment [under] Rule 68 [of the Federal Rules of Civil

Procedure,] requires an award to defendant of its fees incurred after that offer."  Nimmer on

Copyright § 14.10[B], at 14-139, 14-140 (Matthew Bender & Co., Inc. 2005) (citing <u>Jordan v.

Time, Inc.</u>, 111 F.3d 102, 104-05 (11th Cir. 1997)); <u>see also</u> <u>Lucas v. Wild Dunes Real Estate,

Inc.</u>, 197 F.R.D. 172, 175-76 (D.S.C. 2000) (awarding attorneys' fees to defendant, in view of

Offer of Judgment that exceeded final judgment and in view of the fact that the Copyright Act,

17 U.S.C. § 505, defines "costs" as including attorney's fees).

        In this case, on January 10, 2002, Baker rejected a Rule 68 Offer of Judgment in

the amount of $9,096 and, in the end, he recovered nothing from this litigation.  Thus, Baker is

required to pay to Urban "the costs [Urban] incurred after the making of the offer."  Fed. R. Civ.

P. 68.  Moreover, because the instant case was one for copyright infringement and because the

Copyright Act defines "costs" to include attorneys' fees, Baker is required to pay to Urban both

its costs and its attorneys' fees incurred after the making of the offer.  Fed. R. Civ. P. 68; <u>see</u> <u>also</u>

<u>Jordan</u>, 111 F.3d at 105 (awarding attorneys' fees to a copyright infringement defendant under

Rule 68 as a part of costs); <u>Lucas</u>, 197 F.R.D. at 175-77 (same).  Thus, pursuant to Rule 68,

Urban is entitled to an award of its costs and attorneys' fees incurred after January 10, 2002.

That amount totals $353,457.14, $336,094.97 incurred from January 10, 2002, the day Baker

rejected the Rule 68 offer, through December 31, 2004 (which amount excludes the $19,270

Weingrad was assessed in connection with the Rule 11 motion), Slipski Decl. ¶ 12, plus

$17,362.17 incurred in 2005, Frandsen Decl. ¶ 6.

III.    Urban's Motion Against Weingrad

       Urban also moves for fees and costs against Weingrad under 28 U.S.C. § 1927

and pursuant to the Court's inherent power.

    A.    Legal Standard under § 1927

       Pursuant to 28 U.S.C. § 1927, an attorney of record in a case may be required

personally to pay costs, expenses, and attorneys' fees that are caused by counsel's unreasonable

and vexatious conduct.  The statute provides as follows:

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any Territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct.

28 U.S.C. § 1927.

       "By its terms, § 1927 looks to unreasonable and vexatious multiplications of

proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid

dilatory tactics."  United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991).

Thus, an award under § 1927 is proper "when the attorney's actions are so completely without

merit as to require the conclusion that they must have been undertaken for some improper

purpose such as delay."  Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).

An award made under § 1927 also must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power.  Id.  In considering whether there has been bad faith, the court may consider the manner in which the action was brought and the manner in which is was litigated.  Id. at 1272.  Bad faith may be inferred when "an attorney engages in conduct that is so objectively unreasonable that he necessarily must have been acting in bad faith."  Forman v. Mt. Sinai Med. Ctr., 128 F.R.D. 591, 600 (S.D.N.Y. 1989).

In summary, sanctions under § 1927 are proper when there is clear evidence that the actions were entirely without color and were taken to harass, delay the proceedings, or for otherwise inappropriate reasons.  Dow Chem. Pac. Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986).

B.      Legal Standard Under the Court's Inherent Power

Courts' inherent power to control their own proceedings includes the power to impose appropriate monetary sanctions on counsel or a litigant, including the assessment of attorney's fees.  Chambers v. Nasco, Inc., 501 U.S. 32, 44-45 (1991).  Under this inherent power, "a court may assess attorney's fees when a party [or lawyer] has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Id. at 45-46 (citation omitted).  For all practical purposes, "[t]he standard [for awarding costs and fees under the court's inherent power] is the same for awarding attorney's fees under 28 U.S.C. § 1927."  Agee v. Paramount Commc'ns, 869 F. Supp. 209, 212 (S.D.N.Y. 1994), aff'd in part, rev'd in part on other grounds, 59 F.3d 317 (2d Cir. 1995).

C.      Application

As noted above, the award of sanctions under the court's inherent powers and under § 1927 essentially overlap, as the bad faith conduct that is necessary for a proper award of

15

§ 1927 sanctions is the same bad faith conduct that justifies an award of sanctions under the court's inherent powers.  See, e.g., Oliveri, 803 F.2d at 1273; Agee, 869 F. Supp. at 212.  Here, it is clear that Weingrad, like Baker, acted in bad faith.

1.    Inclusion of Statutory Damages Claim

In the Complaint, Weingrad included a claim for statutory damages under the Copyright Act in an amount of "not less than one hundred fifty thousands [sic] dollars ($150,000)."  Complaint at 9, ¶ 3D.  The inclusion of such a claim was improper, unreasonable, and vexatious in light of the fact that (a) this type of claim was precluded by the plain language of the Copyright Act, and (b) Weingrad was well aware of the law in this area.

The plain language of section 412 of the Copyright Act precludes a prevailing plaintiff from seeking the statutory damages and attorney's fees for infringement of a published work if infringement of the work commenced after first publication and before registration.  17 U.S.C. § 412(2).  The only exception to this absolute statutory bar of exceptional remedies involves cases where registration of the work, although not accomplished before registration, is effectuated within three months following said publication.  Id.

According to the Complaint, Urban's "infringement" of the Photograph commenced in "Summer of 2000."  Complaint ¶ 14.  This date is clearly after publication of the work, which took place in 1999, and more than three months before the effective date of registration, which is March 9, 2001.  See Copyright Registration noting effective date as March 9, 2001.  Therefore, on its face, section 412 of the Copyright Act precludes an award of statutory damages and attorney's fees as a matter of law.  See Ez-Tixz, Inc. v. Hit-Tix, Inc., 919 F. Supp. 728, 735 (S.D.N.Y. 1996).

It is also significant that Weingrad clearly was aware of the law in this area, as he had previously litigated this precise question (and lost) in <u>Marvullo v. Gruner & Jahr AG & Co.</u>, No. 98 Civ. 5000, 2001 U.S. Dist. LEXIS 266, at *11-12 (S.D.N.Y. Jan. 16, 2001).  In view of the clear statutory language precluding statutory damages in cases like the instant one and in view of Weingrad's prior experience with and knowledge of this point of law, it was unreasonable, vexatious, and clearly in bad faith for Weingrad to include a claim for statutory damages in the Complaint in this case.  <u>See, e.g.</u>, <u>Hudson Motors P'ship v. Crest Leasing Enters.</u>, 845 F. Supp. 969, 979 (E.D.N.Y. 1994) (noting that the "intentional advancement of a baseless contention" is indicative of bad faith) (quoting <u>Ford v. Temple Hosp.</u>, 790 F.2d 342, 347 (3d Cir. 1986)).

Not only was it improper for Weingrad to plead such a claim, but it was also unreasonable and vexatious for Weingrad to maintain it for so long before agreeing to dismissal. As set forth in detail in the Declaration dated April 22, 2005, in August of 2001, in a telephone call with Urban's counsel, Weingrad specifically refused to dismiss the statutory damage claim. Slipski Decl. ¶ 2.  As a result of Weingrad's position, Urban's counsel began drafting a motion to dismiss on that issue.  Slipski Decl. ¶ 3.

When Urban's counsel informed Weingrad that Urban would be filing a motion to dismiss the statutory damage claim, Weingrad first indicated that the motion would not be necessary because he agreed such damages were not available. Slipski Decl. ¶ 4.  Later that same day, however, he changed his position and indicated that he would not stipulate to a dismissal of the claim.  Slipski Decl. ¶ 5.  He did, however, agree to review case law cited to him by Urban's counsel that held that such a claim was improper on the facts of this case.  Slipski Decl. ¶ 5. Three days later, Weingrad's associate called Urban's counsel in the morning and indicated that

Plaintiff was still disinclined to agree to dismiss the statutory damage claim, as they had located case law to support it.  Slipski Decl. ¶ 6.  Without further explanation, Weingrad's associate then called Urban's counsel back a few hours later and indicated that Plaintiff would stipulate to a dismissal of the claim if Urban's counsel would draft the stipulation.  Slipski Decl. ¶ 7.  Weingrad does not dispute Urban's counsel's recitation of the facts.

Weingrad's actions in delaying the dismissal of this facially invalid claim were so lacking in merit as to amount to bad faith and vexatiously multiplied the proceedings.  As set out on the time entries for Urban's counsel for August 28-30, September 6, 10, and 12, 2001, these actions cost Urban $2,361.50.

2.      The Inclusion of Tortious
        Misappropriation of Goodwill Claim

Weingrad also included a claim for tortious misappropriation of goodwill in the Complaint, notwithstanding the fact that such a claim is clearly preempted by the provisions of the Copyright Act.  The inclusion of such a claim was improper, unreasonable, and vexatious in light of the fact that (a) this type of claim was precluded by established case law, and (b) Weingrad was well aware of the law in this area.

"A state law cause of action is preempted by federal copyright law if (1) the subject matter of the state law right falls within the subject matter of copyright law, and (2) the state right asserted is equivalent to an exclusive right protected by federal copyright law."  Marvullo, 2001 U.S. Dist. LEXIS 266, at *18 (citing Kregos v. Associated Press, 3 F.3d 656, 666 (2d Cir. 1993)).  Baker's claim for state law "tortious misappropriation of goodwill" meets both elements of this test, as the claim involves a copyrightable photograph and it is based solely on Urban's alleged copyright infringement, namely an "exploit[ation] without authorization for

18

their own commercial advantage [of] plaintiff's copyrighted work and the unique elements and features of the creation of the photograph."  Complaint ¶ 37.

Once again, Weingrad was well aware of the law on this point, as he litigated the issue (and lost) in Fournier v. McCann Erickson, 202 F. Supp. 2d 290 (S.D.N.Y. 2002).  In view of the clear case law precluding the tortious misappropriation claim and of Weingrad's prior experience with and knowledge of this point of law, it was unreasonable and vexatious for him to include a claim for tortious misappropriation of goodwill in the Complaint.

It was also improper, unreasonable, and vexatious for Weingrad to maintain the tortious misappropriation claims for so long before agreeing to dismissal.  The Fournier case was decided in May of 2002.  Yet Urban was forced to brief this issue in August of 2002.  Only after the filing of Urban's summary judgment brief, in which Urban cited to the Fournier case, among others, did Weingrad cause Baker to stipulate to the dismissal of the tortious misappropriation claim.  Weingrad's initial inclusion of this claim, coupled with his refusal simply to agree to an immediate dismissal of a claim that he knew was without merit, constitutes bad faith.  See Hudson Motors, 845 F. Supp. at 979.  This bad faith conduct multiplied the proceedings and required Urban to include this point in its summary judgment brief.  Although it is not possible to determine the precise amount of time attributable to this point, a review of the time entries on the invoice dated November 30, 2002, demonstrates that Urban's estimate of $3,895 is entirely reasonable.

3.      $260,000 Damage Claim

Weingrad was also unreasonable and vexatious in maintaining Baker's claim for actual damages of $260,000.  As a result of these actions, Urban was forced to expend time and resources on a Motion for Partial Summary Judgment to limit Baker's damage claim to $3,896.

As noted above, Weingrad knew that the damages available in the instant case were limited to Baker's "actual damages," i.e., "the actual damages suffered by [the plaintiff] as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).  Weingrad also knew that the "actual damage" number was not going to be a high one. Early on, discovery showed that Urban's profits were $3,896, and there was no evidence of any actual damages suffered by Baker above this amount.  See Baker I, 254 F. Supp. 2d at 356. Indeed, as noted above, on November 30, 2001, Weingrad wrote a letter to Baker indicating that Baker must be prepared to attend both a deposition and a trial in New York, "which expense may not be warranted in light of [Urban's] sales records."  See November 30, 2001 letter from Weingrad to Baker.

Notwithstanding the above, Weingrad continued to maintain Baker's claim for damages in excess of a quarter of a million dollars well after the rather modest profit amount was disclosed.  As set out in Baker I, the claim was "too extravagant to be maintained" and "exactly the kind of abuse the On Davis court warned about."  See Baker I, 254 F. Supp. 2d at 358 (referring to On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2000)).  Manifestly, the damages position Weingrad enunciated on Baker's behalf was so unreasonable and completely without merit that one can only assume counsel acted in bad faith and for an improper purpose. As noted above, an award under § 1927 is proper under these circumstances.  See Oliveri, 803 F.2d at 1273 ("when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose . . . . "); see also Forman, 128 F.R.D. at 599-600 (noting, in the § 1927 context, that bad faith may be inferred when "an attorney engages in conduct that is so objectively unreasonable that he necessarily

must have been acting in bad faith").  An award of sanctions under the court's inherent power is also proper under these circumstances.  See Chambers, 501 U.S. at 45-46 (noting that under this inherent power, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'") (citation omitted).

In addition to this reasonable inference of bad faith, there is also documentary evidence of bad faith.  As noted above, in the initial correspondence between Baker's representative, Peter Kaplan, and Weingrad, Kaplan wrote:  "After you read the stuff in the FedEx package, which should get there in the afternoon, please give me a call to discuss.  I really think this is a really great case with a lot of STUPID, obstinate, deep pocketed, WILLFUL INFRINGERS."  See Kaplan letter to Weingrad dated April 23, 2001.  Thus, one can infer that Weingrad's motivation was toward pursuing an unwarranted financial windfall and personal promotion – all in bad faith within the meaning of § 1927 and the cases on the Court's inherent power.

In response to Weingrad's continued pressing of a claim for damages many times what the statute permitted, Urban made a motion for partial summary judgment to limit Baker's damages to $3,896, the amount of Urban's profit on the plastic frames in which the Paper Insert was used.  Urban seeks $21,248, a portion of the fees and costs incurred in making that motion.  Based on Weingrad's conduct and my review of Urban's lawyers' timesheets, that amount is entirely reasonable.

        4.      <u>Withholding of Licensing Evidence</u>

As noted above, Baker and Weingrad acted in bad faith and unreasonably and vexatiously multiplied these proceedings with respect to the licensing evidence.  Initially, Weingrad objected to production of documents on this issue on the ground that they were

irrelevant – a position entirely without merit.  See On Davis, 246 F.3d at 164-66 (holding that

the fair market value of a lost license fee may be "actual damages" within the meaning of

§ 504).  Then, after production was ordered, Weingrad withheld evidence regarding Baker's

past licensing activities from Urban while continuing to represent to the Court – falsely, it now

appears – that Baker had not licensed any photographs prior to this action.  The eventual

production of documents on the last day of discovery required discovery to be re-opened.

Clearly, these actions vexatiously multiplied the proceedings.

       Apparently, in an attempt to control expenses, Urban graciously agreed to

conduct Baker's continued deposition by telephone because Baker resides in England.

Weingrad, however, had provided the wrong telephone number (deleting a digit), and the

deposition was postponed for 45 minutes.  Despite the fact that the delay was caused by his

transmittal of incorrect contact information (and his office's confirmation of the incorrect

information), Weingrad demanded $2,500 for the delay.  Urban seeks $25,332.50 on account

of Weingrad's part in the withholding of licensing evidence representing a portion of the fees

and costs incurred in connection with compelling production of that evidence and in preparing

for and conducting the second Baker deposition.  Based on Weingrad's conduct and my review

of counsel's time sheets that amount is entirely reasonable.

     5.   Motions and Briefs

       As noted above, Baker's Rule 11 motion against Urban's counsel was found to be

so frivolous that the Court imposed on Weingrad attorney's fees in the amount of $19,270

incurred by Urban in responding to it.  Also, that motion and Baker's response to Urban's motion

for summary judgment were replete with rambling, irrelevant, unsupported assertions of fact and

law.  For example, in opposition to Urban's summary judgment motion, Weingrad's brief cited

to moral rights and foreign law, neither of which had any bearing on the issues presented.  Thus, Weingrad's conduct of the motion practice in this case made the defense much more complicated and expensive than it should have been and needlessly multiplied the proceedings.[2]  Although Weingrad's rambling and incomprehensible briefs were present throughout the proceedings here, Urban only seeks costs, expenses, and attorneys' fees from Weingrad on this point in the amount of $12,923.50, the amount incurred by Urban in responding to Plaintiff's Opposition to Urban's Motion for Summary Judgment – perhaps the most egregious of Weingrad's briefs.  Based on a review of Urban's counsel's time records, that amount is quite reasonable given the enormous extra effort required to respond to Weingrad's briefs.

IV.    <u>Summary</u>

As set out above, the following amounts have been assessed against Baker pursuant to the statutes or rules indicated:

| | |
|---|---|
| Copyright Act § 505 | $388,424.54[3] |
| Rule 68 | $353,457.14[3] |

Because the amount assessed under the Copyright Act represents the total amount of Urban's attorney's fees, costs and expenses (minus the $19,270), it subsumes the Rule 68 amount.  Thus, Baker's total assessment is $388,424.54.

The following amounts have been assessed against Weingrad pursuant to the rules, statutes and authority indicated:

---

[2] The Court of Appeals' description of one of Weingrad's briefs is equally applicable here: "[Weingrad's] Brief is at best an invitation to the court to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for appellant."  <u>Ernst Haas Studio, Inc. v. Palm Press, Inc.</u>, 164 F.3d 110, 112 (2d Cir. 1999).

[3] These amounts do not include the $19,270 assessed against Weingrad under Rule 11.  <u>See Baker I</u>.

Rule 11                              $19,270[4]

28 U.S.C. § 1927 and the court's inherent power:

| | |
|---|---|
| statutory damage claim | $ 2,361.50 |
| tortious misappropriation claim | $ 3,895.00 |
| $260,000 damage claim | $21,248.00 |
| withholding of licensing evidence | $25,332.50 |
| motions and briefs | $12,923.50 |
| TOTAL | $65,760.50 |

## Conclusion

For the reasons set out above, Urban's motions (1) against Baker to recover fees and costs under the Copyright Act and Rule 68 (dkt. no. 53) is granted in the amount of $388,424.54, and (2) against Weingrad to recover fees and costs under 28 U.S.C. 1927 and the Court's inherent power (dkt. no. 54) is granted in the amount of $65,760.50. Baker and Weingrad are ordered to pay those sums within ten business days of the date hereof. Judgment shall be entered accordingly.

SO ORDERED:

Dated: New York, New York
       May 5, 2006

*Loretta a. Preska*

LORETTA A. PRESKA, U.S.D.J.

---

[4] See Baker I and Frandsen Decl., Ex. 8.

24